Charles A. Brown
Attorney at Law
324 Main Street
P.O. Box 1225
Lewiston, ID  83501
208-746-9947
208-746-5886 (fax)
ISB # 2129
CharlesABrown@cableone.net
Attorney for Plaintiffs.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| THE ASSOCIATED PRESS, a New York corporation; IDAHO STATESMAN PUBLISHING, LLC, a Delaware limited liability company d/b/a  The Idaho Statesman; LEE ENTERPRISES, INCORPORATED, a Delaware corporation d/b/a The Times-News; THE IDAHO PRESS CLUB, INC., an Idaho corporation; PIONEER NEWSPAPERS, INC., a Nevada corporation d/b/a Idaho Press-Tribune, Idaho State Journal, Standard Journal, Teton Valley News, The News-Examiner, The Preston Citizen, and Messenger Index; TPC HOLDINGS, INC., an Idaho corporation, d/b/a Lewiston Tribune and Moscow-Pullman Daily News; BAR BAR INC., an Idaho corporation d/b/a Boise Weekly; COWLES PUBLISHING COMPANY, a Washington corporation, d/b/a The Spokesman Review; and IDAHOANS FOR OPENNESS IN GOVERNMENT, INC., an Idaho non-profit corporation; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____<br><br>COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF |
| Plaintiffs, | ) ) | |

v.                                  )
                                    )
C.L. (BUTCH) OTTER, in his official )
capacity as the Governor of the State of )
Idaho; ROBIN SANDY, HOWARD G. )
"J.R." VAN TASSEL, and JAY L. )
NIELSEN in their official capacity as the )
Idaho Board of Correction; BRENT D. )
REINKE, in his official capacity as the )
Director of the Idaho Department of )
Correction; and KEVIN KEMPF in his )
official capacity as Division Chief of )
Operations of the Idaho Department of )
Correction,                         )
                                    )
                    Defendants.     )

COME NOW the above-named Plaintiffs and for a cause of action against the Defendants, and each of them, allege and complain as follows:

1.      This matter, brought pursuant to 42 U.S.C. § 1983, seeks preliminary and permanent injunctive and declaratory relief in response to violations by the above-named Defendants of the First Amendment to the United States Constitution, incorporated and applied to the states by the Fourteenth Amendment.  Plaintiffs seek to prohibit the State of Idaho from engaging in unconstitutional procedures currently followed by the Idaho Department of Correction ("IDOC") which prevent uninhibited viewing of the entirety of the execution of condemned inmates.

2.      Under the procedure currently followed by the IDOC, the public, members of the media, and other witnesses are prevented from viewing the preparatory phase of the execution process prior to actual administration of the lethal injection.  This preparatory phase spans and includes the prisoner's initial entry into the execution chamber, placement of restraints on the prisoner to secure the prisoner to the execution table, connection of monitoring equipment (EKG

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

machine) to the prisoner, and the insertion of catheters and attachment of intravenous ( IV) lines necessary to administer the injection.

This preparatory phase is conducted behind a window covering and/or without witnesses present so that by the time viewing is allowed, witnesses are denied any real opportunity to fairly view the execution process.

3.      By prohibiting the viewing of the entirety of the execution process, Defendants have deprived and continue to deprive the Plaintiffs, and those similarly situated, of their rights recognized under the First and Fourteenth Amendments to observe uninhibited the execution of a condemned inmate.

## I. - THE PLAINTIFFS

4.      Plaintiff *THE ASSOCIATED PRESS* is a New York corporation with a place of business located in Boise, Ada County, Idaho, and its registered agent and Administrative Correspondent in Idaho is TODD  DVORAK, who is a resident of Boise, Ada County, Idaho.

5.      Plaintiff IDAHO STATESMAN PUBLISHING, LLC, is a Delaware limited liability company d/b/a *The Idaho Statesman* with a place of business located in Boise, Ada County, Idaho.

6.      Plaintiff LEE ENTERPRISES, INC. is a Delaware corporation d/b/a *Times-News* with a place of business located in Twin Falls, Twin Falls County, Idaho.

7.      Plaintiff THE IDAHO PRESS CLUB, INC., is an Idaho corporation with a place of business located in Boise, Ada County, Idaho.

8.      Plaintiff PIONEER NEWSPAPERS, INC., is a Nevada corporation d/b/a *Idaho Press-Tribune* which is located in Nampa, Canyon County, Idaho; d/b/a *Idaho State Journal,* which is located in Pocatello, Bannock County, Idaho; d/b/a *Standard Journal* which is located in

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

Rexburg, Madison County, Idaho; d/b/a *Teton Valley News* which is located in Driggs, Teton County, Idaho; d/b/a *The News-Examiner* which is located in Montpelier, Bear Lake County, Idaho; d/b/a *The Preston Citizen* which is located in Preston, Franklin County, Idaho; and d/b/a *Messenger Index,* located in Emmett, Gem County, Idaho.

9.      Plaintiff TPC HOLDINGS, INC., is an Idaho corporation, d/b/a *Lewiston Tribune* and the *Moscow-Pullman Daily News,* with its principal place of business in Lewiston, Nez Perce County, Idaho.

10.     Plaintiff BAR BAR INC., is an Idaho corporation d/b/a *Boise Weekly* with a principal place of business located in Boise, Ada County, Idaho.

11.     Plaintiff COWLES PUBLISHING COMPANY, is a Washington corporation, d/b/a *The Spokesman Review* with its principal place of business in Spokane, Spokane County, Washington.

12.     Plaintiff IDAHOANS FOR OPENNESS IN GOVERNMENT, INC., is an Idaho non-profit corporation with its principal place of business in Boise, Ada County, Idaho.

## II. - THE DEFENDANTS

13.     Defendant C.L. (BUTCH) OTTER is the Governor of the State of Idaho and is responsible under the Idaho Constitution for seeing that the laws of the State are executed.  He is named in his official capacity only.

14.     Defendants ROBIN SANDY, HOWARD G. "J.R." VAN TASSEL, and JAY L. NIELSEN are the individuals who comprise the Idaho Board of Correction.  They are named in their official capacity only.

15.     Defendant BRENT D. REINKE is the director of the Idaho Department of Correction, which is tasked with establishing, designing and implementation of the IDOC

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

execution policies and protocol inclusive of witness access. He is named in his official capacity only.

16.     Defendant KEVIN KEMPF is the Division Chief of Operations of the Idaho Department of Correction, which is tasked with implementing the IDOC execution policies and protocol.  He is named in his official capacity only.

17.     All of the acts and omissions set forth in this matter were performed by the Defendants or the Defendants' employees and agents, within the scope of their employment, and under the color and authority of State law and will act under color of State law in carrying out future executions. They were official acts of the Defendants undertaken directly by policymakers, they were actions caused by the policies, procedures, practices and customs of the State of Idaho, or they were ratified by the Defendants.

### III. - JURISDICTION

18.     The Plaintiffs bring this action to enjoin imminent violations of the First and Fourteenth Amendments to the United States Constitution.

19.     This Court has subject matter jurisdiction over the Plaintiffs' 42 U.S.C. § 1983 claims under 28 U.S.C. § 1331.  It has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 65.

20.     The action is ripe for adjudication.

21.     The action qualifies as an exception to the mootness limitation on federal jurisdiction under the "capable of repetition, yet evading review" doctrine.  Two prerequisites exist in order to qualify for this exception: (1) the challenged action was too short in duration to be resolved by litigation, and (2) a reasonable expectation that the same complaining party would be subjected to the same action again.  Both prerequisites are satisfied.

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

22.     The action represents a genuine and actual controversy between the parties as set forth below.

23.     Venue is proper in this Court and District, under 28 U.S.C. § 1391(b)(1) & (2), because the Defendants are subject to personal jurisdiction in this District and because the events and omissions giving rise to this action occurred in this District and will, absent judicial relief, transpire within this judicial district again in the future.

### IV. - FACTUAL BACKGROUND

24.     **A.   Execution Protocol**

Paul Ezra Rhoades was executed by the State of Idaho on November 18, 2011. Prior to his execution, the director of the IDOC was contacted by members of the media, some of whom are represented above as plaintiffs, to voice the objection that the execution protocol as adopted by the IDOC is flawed and is not compliant with the dictates of a 2002 case issued by the Ninth Circuit, *California First Amendment Coalition v. Woodford*, 299 F.3d 868, 30 Media L. Rptr. 2345 (9th Cir. 2002) in that it prohibits the public and media witnesses from viewing the entirety of the execution process. **Exhibit A** is a true and correct copy of that email, which is dated November 15, 2011, and is incorporated herein by reference as though fully set forth. (The exhibits to this Complaint have been redacted as to phone numbers and email addresses.)

A follow-up to that email was made to Mr. Jeff Ray, the IDOC public information officer. Mr. Ray responded on behalf of Director Reinke and the IDOC as follows: "The procedures were developed so that we would preserve the dignity of the offender. After discussing the matter with Director Reinke and legal counsel we have chosen to follow the procedures as they are written." **Exhibit B** attached hereto and incorporated herein by reference reflects a true and correct copy of the follow-up email from the media and Mr. Ray's response on behalf of the IDOC.

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

On November 16, 2011, a more formal request was made of the IDOC in the form of a letter, as shown in **Exhibit C** attached hereto and incorporated herein by reference. Director Reinke responded in an email dated November 16, 2011, which reads in total as follows:

To:      Charles Brown, Attorney at Law charlesabrown@cableone.net

Cc:      Rebecca Boone, . . .
         Todd Dvorak, . . .

From:    Brent D. Reinke, Director

Date:    November 16, 2011

RE:      Request to view

Dear Mr. Brown,

Thank you for your letter regarding your clients' desire to view all aspects of the November 18 execution of Paul Ezra Rhoades.  The changes you have requested at this late hour to IDOC's execution procedures would have a potentially disruptive effect on the entire process.  Among other things, it could compromise the anonymity of members of IDOC's execution team.

We are aware of the Ninth Circuit Court's ruling which you cite in your correspondence.  The ruling was based on facts unique to California.

In the months to come we shall review every aspect of Friday's execution.  As we do, we shall welcome your clients' input on how we can improve this process.

Sincerely,

Brent D. Reinke, Director
Idaho Department of Correction

*See* **Exhibit D** attached hereto.

**Exhibit E** attached hereto and incorporated herein is a true and correct copy of a letter dated November 17, 2011, which reads, in part:

My clients have indicated that they do not want to interfere with the Rhoades execution with the understanding that a timely and meaningful review process will proceed.

Could you please give me a time line as to your proposed review process so that
future complications and challenges can be avoided.

As noted above, Mr. Rhoades was executed on November 18, 2011.  On January 24, 2012,
representatives of the media met with Director Reinke, Mr. Mark A. Kubinski from the Attorney
General's Office for the State of Idaho, Jeff Ray, PIO for Department of Corrections.  An open
discussion was held as to concerns that the initial portion of the execution process was not open to
viewing, but no resolution of the issues was achieved by the conclusion of the meeting.  However,
the State of Idaho representatives indicated that they would review the situation after dialogue
with the media representatives.

Thereafter a letter dated February 1, 2012, was written on behalf of the State of
Idaho by Mr. Kubinski, a true and correct copy of which is attached hereto as **Exhibit F** and
incorporated herein as through fully set forth.  This letter indicates that the representatives of the
State of Idaho were not going to change their execution protocol.

The execution of Mr. Rhoades was the first execution in approximately 17 years in
the State of Idaho and the only involuntary execution since 1957.

In preparation for said execution, the State of Idaho had re-written its protocol and
procedures for every aspect of the execution.  The execution process involves preparation of the
condemned inmate and subsequent administration of a lethal injection.

The State of Idaho's protocol conflicts with the First Amendment of the United
States Constitution in that said protocol prevents the media or any other witnesses to the execution
from observing the entirety of the process.  Thus, witnesses are not allowed to view initial entry
into the execution chamber, the connection of an electrocardiogram to the condemned inmate,
restraint of the condemned inmate, insertion of catheters at various locations on the body of the

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

condemned inmate, or the final attachment of intravenous lines.  Once this process is finalized,

window coverings are then removed and/or witnesses are allowed into the viewing area.

The remainder of the execution process is visible by witnesses present in the

viewing room.

Appendix A to the IDOC Protocol reads as follows:

At the designated time, the Escort Team will escort the offender to the execution room secured on the table by the prescribed means with the offender's arms positioned at an angle away from the offender's side.

After the offender has been secured to the execution table, the Escort Team leader will personally check the restraints which secure the offender to the table to ensure they are not so restrictive as to impede the offender's circulation, yet sufficient to prevent the offender from manipulating the catheters and IV lines.

Once the offender is secured, the Medical Team leader will attach the leads from the electrocardiograph (EKG) machine to the offender's chest and confirm that the EKG machine is functioning properly and that the proper graph paper is used. A backup EKG machine shall be on site and readily available if necessary.

A Medical Team member shall be assigned to monitor the EKG machine, and mark the EKG graph paper at the commencement and completion of the administration of each chemical. The assigned identifier of the Medical Team member monitoring the EKG machine shall be noted at each juncture.

Throughout the procedure, the Medical Team members shall continually monitor the offender's level of consciousness and EKG machine readings, maintaining constant observation of the offender using one or more of the following methods: direct observation, audio equipment, camera, and television monitor as well as any other medically approved method(s) deemed necessary by the Medical Team leader. The Medical Team leader shall be responsible for monitoring the offender's level of consciousness.

The assigned Medical Team members will insert the catheters and attach the IV lines.

The witnesses will be brought in to the applicable witness areas.

The issue before this Court is singular in nature.  The issue *not* before this Court is

the constitutionality of capital punishment.  Rather, the singular issue before this Court is whether

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

or not the entire execution process – including the preparatory phase – should be opened for viewing.

It should also be noted that at various times in the execution chamber representatives of the State of Idaho are garbed in such a manner as to protect their identity in order to handle the execution process.

Concealment of the identity of any state representative participating in the execution process is also not at issue and is not the focus of this Complaint.

Additional executions are planned but all are not yet scheduled.  On May 17, 2012, an execution was scheduled for June 12, 2012, for Mr. Richard A. Leavitt.  The State of Idaho has announced that Mr. Leavitt will be executed using a new one-drug protocol which will result in the execution team administering a singular lethal dose of pentobarbital through the IV instead of the three-drug series that was used for Mr. Rhoades' execution in November. Thus, the preparation process is particularly critical to be observed given any complications that could arise during this portion of the execution procedure.

The execution of an individual by a state authority is the ultimate and absolute expression of governmental power in civilized society.  Questions regarding the propriety of capital punishment remain for others to answer at a different time and date, but access to the execution process by both the public and the press is guaranteed under the First Amendment to the United States Constitution.

25.  **B. Historical Tradition of Public Executions in the United States**

As the Ninth Circuit Court has found in *California First Amendment Coalition v. Woodford*, 299 F.3d 868, 30 Media L. Rptr. 2345 (9th Cir. 2002) the tradition of public executions in the United States originates with England, where for centuries public executions were routine,

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

commonplace, and surrounded by fanfare.  Despite the gradual abolition of public executions by moving the practice behind prison walls, this heritage survived in many jurisdictions of the United States until the very last public execution in 1937.

Though the abolition of public executions changed the forum associated with the practice, statutory and procedural provisions preserved a high degree of public access to executions.  States sought to guarantee the transparency of the execution process by statutorily requiring the presence of witnesses to view the event.  In essence, these witnesses were intended to serve as representatives of the broader public.  The press quite naturally assumed the role of a proxy or surrogate for the interests of the public as a safeguard to maintain the integrity and humanity of the execution process.

The *California First Amendment Coalition v. Woodford* court found that currently, every jurisdiction that allows capital punishment also requires the attendance of public and media witnesses. (Your complainants believe Indiana may be an exception to this general finding.)

COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF                    11

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

26.     **C.  Execution by Lethal Injection in Idaho and Delegation of Authority**

Effective March 31, 1982, the Idaho State Legislature enacted Idaho Code § 19-2716, a statute which prescribes lethal injection for all executions, subject to practicality exceptions that warrant death by firing squad.

The statute provides that the "punishment of death shall be inflicted by continuous, intravenous administration of a lethal quantity of a substance or substances approved by the director of the Idaho department of correction."  I.C. Ann. § 19-2716 (Lexis Supp. 2011).  It expressly delegates to the director the authority to determine the exact substance or combination of substances to be employed.

In addition, the statute also delegates to the IDOC the authority to determine the procedures appropriate for all executions.  *Id.*

The language of delegation within the statute reads as follows:  "The director of the department of corrections shall determine the substance or substances to be used and the procedures to be used in any execution."  *Id.*

27.     **D.  Preparatory Procedures for Administration of Lethal Injection**

Idaho Department of Correction's regulations provide that the Idaho Maximum Security Institution warden transfer custody of the chemicals necessary for a lethal injection to the Medical Team.  The Medical Team supervisor then oversees preparation of the syringes utilized in the execution process.

These regulations allow four options for syringe preparation, dependent upon chemical availability.  IDAPA 135.02.01.001, app. A, "Approved Chemicals."  Each option includes a series of injections to be administered in a predetermined sequence according to designated chemical charts.  Two complete sets of chemicals are utilized in the execution process, while a

COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF                    12

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

third set is readily available as back up.   IDAPA 135.02.01.001, app. A, "Preparation of Chemicals."   Chemical amounts are titrated to a body weight of 500 pounds or less, unless modified for an offender whose weight exceeds this standard.   IDAPA 135.02.01.001, app. A, "Approved Chemicals."

No later than four (4) hours prior to the execution, the condemned inmate is offered a mild sedative, dependent upon the particular prisoner's need, an additional sedative may be administered if it is determined medically necessary.

At the appointed time, the prisoner is subsequently moved from an isolation cell into the execution chamber and secured to the execution table.   IDAPA 135.02.01.001, app. A, "Preparation, Movement and Monitoring of Offender."

Leads from an electrocardiograph machine are then attached to the prisoner's chest.   *Id*.

Both a primary intravenous catheter and a backup intravenous catheter are inserted at two separate locations on the prisoner, unless the Medical Team leader determines that two (2) peripheral lines cannot be reliably placed.   IDAPA 135.02.01.001, app. A, "Intravenous Lines."   In order of preference, the potential insertion sites are designated as the prisoner's arms, hands, ankles, and feet.   The insertion sites are determined at the discretion of the Medical Team leader. The Medical Team leader also retains discretion to either apply or not apply a localized anesthetic to the venous access points.   *Id*.

If, in the opinion of the Medical Team leader, peripheral lines cannot be reliably placed, IDOC's regulations prescribe placement of a central line catheter by a member of the Medical Team.   *Id*.

28.   **E.   Witness Observation of the Execution Process**

COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF                    13

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

According to IDOC's regulations, the director of the IDOC, or a designee, possesses discretion to determine the number of persons allowed in the Execution Unit, which includes witness areas, during the execution.  In fact, placement of attendees in the Execution Unit is subject to change at the discretion of the Idaho Maximum Security Institution warden.

Subject to this overarching backdrop of complete discretion, IDOC's regulations allot four (4) seats in the witness area to representatives of the news media.  One seat is allocated to the *Associated Press*, while the remaining seats are allocated by random drawing.  One of these seats is reserved for media from the county of the prisoner's conviction. Again, however, the director of the IDOC determines which local media organizations qualify to participate in the pool.

Witnesses are not allowed into the witness area until after the condemned inmate has been escorted into the execution chamber, the condemned inmate has been strapped to the execution table, the condemned inmate has been offered a sedative, an electrocardiograph machine has been attached to the condemned inmate's chest, all necessary catheters have been inserted into the condemned inmate's body, and all intravenous lines have been attached.

The Defendants do not allow either public or media witnesses the opportunity to view or observe any portion of this preparatory phase of the execution process.

Although witnesses can hear the condemned inmate's last statement, they are unable to hear any utterances or noises made by the condemned inmate during administration of the lethal injection itself.

By preventing the public and press from viewing the entirety of the execution process, and the preparatory phase in particular, Defendants have effectively removed the execution process from any meaningful form of public scrutiny and have silenced any fruitful public debate.

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

The Defendants have arbitrarily and unconstitutionally denied Plaintiffs the opportunity to evaluate the quality and integrity of the execution process.  Without access to observe the entirety of the execution process, Plaintiffs have been denied the opportunity to critically examine the execution procedures implemented by the IDOC in order to ensure compliance with "the evolving standards of decency which mark the progress of a maturing society." *Cal. First Amend. Coalition,* 209 F.3d at 876 quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958).

29.    At all times relevant hereto, Defendants have enforced and continue to enforce the practices, procedures, and protocol of the IDOC and its employees pertaining to the execution process.  These practices, procedures, and protocol include preparation of chemical syringes for use on the condemned inmate, movement of the condemned inmate to the execution chamber, the connection of an electrocardiogram to the condemned inmate, restraint of the condemned inmate, administration of a sedative to the condemned inmate, insertion of catheters at various locations on the body of the condemned inmate, and final attachment of intravenous lines.  These practices, procedures, and protocol constitute the policy of the Defendants, the IDOC, and the State of Idaho with respect to the subject matter thereof.

30.    The regulatory requirement of witness attendance at an execution, by representatives of the public who observe the process through which a sentence of death is imposed upon a condemned inmate, allows viewing of the execution process in its entirety. Without the advantage of a transparent execution process, a process open to view in its entirety from start to finish, the fundamental motivating purpose behind witness attendance at an execution is lost.

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

31.     Official witnesses, including members of the media, serve as surrogates of the public at large.  Well-recognized is the public's "First Amendment right to view executions from the moment the condemned inmate is escorted into the execution chamber, including those initial procedures that are inextricably intertwined with the process of putting the condemned inmate to death." *Id*. at 877.  Indeed, "[i]ndependent public scrutiny … plays a significant role in the proper functioning of capital punishment."  *Id*. at 876.  Public access to an open execution process enhances institutional legitimacy for governmental action that expresses an ultimate coercive authority to impose the finality of death, promoting "an appearance of fairness, thereby heightening public respect for the judicial process." *Id*. at 877.  From the standpoint of justice in a free society and appropriate punishment for transgressions against societal norms, "public observations of executions fosters the same sense of catharsis that public observation of criminal trials fosters." *Id*.  Shrouding a key stage of the execution process behind a veil of secrecy defeats the public interest in verifying governmental assurances that punishment of the condemned is both fair and effective.

32.     The Defendants, those acting in concert with them, and the State of Idaho as a matter of practice, procedure, protocol, and policy have consciously chosen to limit public access to all phases of the execution process.  The Defendants have been advised that their actions contravene the dictates of the First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.  *See* **Exhibits A** and **C** hereto.  Contrary to Defendants' assurances, a review of the execution protocol followed by the IDOC has not occurred. Defendants, in fact, have refused to modify the protocol in any aspect.

33.     As a direct and proximate result of Defendants' actions that inhibit media and lay witnesses from observing the execution process in its entirety from start to finish: (a) the qualified

COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF                    16

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

First Amendment right of access to governmental proceedings supposedly enjoyed by the press and the public have been continually violated and (b) vigorous and robust public debate concerning the merits of lethal injection as a form of execution has been silenced.

## V. – CAUSE OF ACTION

### VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT OF ACCESS TO GOVERNMENTAL PROCEEDINGS

34.     Plaintiffs incorporate by reference all preceding paragraphs as if set forth herein and further allege as follows:

35.     In creating, maintaining, and implementing the practice, procedure, protocol, and policy of preventing witnesses' uninhibited and uninterrupted observation of the execution process in its entirety, Defendants at all times relevant hereto have acted, and continue to act, under the color and authority of state law.

36.     Defendants' practice, procedure, protocol, and policy prevent execution witnesses from observing the entirety of the execution process both visually and audibly, so that the purpose behind witness attendance at executions is severely impaired.   Defendants thereby exclude witnesses from any observation of the condemned inmate's movement into the execution chamber and connection of monitoring equipment to the condemned inmate.

37.     Under 42 U.S.C. § 1983, the Plaintiffs are entitled to injunctive and prospective relief prohibiting the Defendants from violating their rights, privileges, or immunities under federal law, the Plaintiffs are not seeking an injunction delaying the execution itself, but only that when said execution does take place that the execution process is open to view by the witnesses.

## VI. - PRAYER

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)

WHEREFORE, the Plaintiffs respectfully pray that this Court order the following relief and remedies:

FIRST:          Declare that the practice, custom, and usage of preventing witnesses to an execution from viewing the entire execution process – starting from the preparatory phase – violates the First Amendment to the United States Constitution, as well as the Constitution's Due Process clause as incorporated by the Fourteenth Amendment to the United States Constitution.

SECOND:     Grant a permanent mandatory injunction requiring all phases of the execution process, beginning with the condemned inmate's procession into the execution chamber, the restraining of the condemned inmate on the execution table, the connection of medical monitoring devices, the insertion of catheters, and the attachment of IV lines, and all incidental treatment of the condemned inmate be conducted in full and open view of the assembled witnesses to that execution.

THIRD:       For an award of the Plaintiffs' nominal damages, the costs of this action, and a reasonable attorney's fee pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54.

FOURTH:     For all such other and further relief as the Court deems to be just and equitable.

DATED on this 22nd day of May, 2012.


/s/  Charles A. Brown
Charles A. Brown
Attorney for Plaintiffs.

# V E R I F I C A T I O N

TODD DVORAK, being first duly sworn on his oath, deposes and says:

That he is the Administrative Correspondent and Registered Agent in the State of Idaho for *The Associated Press*, one of the Plaintiffs in the above-entitled matter, that he has read the foregoing Complaint for Declaratory Judgment and Injunctive Relief, well knows the contents thereof and verily believes that the facts therein stated are true.

DATED on this 22nd day of May, 2012.


/s/   Todd Dvorak
Todd Dvorak, Administrative Correspondent
& Registered Agent for *The Associated Press*


STATE OF IDAHO              )
                                           : ss.
County of Ada                  )

I,   Cordell Rich   , a notary public, do hereby certify that on this 22nd day of May, 2012, personally appeared TODD DVORAK, who, being first duly sworn, declared that he is the Administrative Correspondent and Registered Agent in the State of Idaho for *The Associated Press*, one of the Plaintiffs in the foregoing document, and that the statements therein contained are true.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal on the day and year first above written.


/s/   Cordell Rich
Notary Public for Idaho
(SEAL)                                          Residing at:   Boise Id
My commission expires on:
 13 Apr 2018

Charles A. Brown, Esq.
P.O. Box 1225/324 Main St.
Lewiston, Idaho 83501
208-746-9947/208-746-5886 (fax)