MESSAGES IN AP/EXECUTION FOR: Chuck                                               PHONEslips

Nov. 15, 2011

Brent Reinke, Director
Idaho Department of Correction

Dear Director Reinke:

We in the press were disappointed to be informed today that the department doesn't intend to match its procedures for press witnesses of the upcoming execution of Paul Ezra Rhoades to the Woodford decision issued by the 9th Circuit, which calls for the press witnesses, as the representatives of the public, to view the entire execution, including the strapping of the prisoner to the gurney and the insertion of IVs, rather than just the final portion or "the dying."

As you may be aware, in California First Amendment Coalition and Society of Professional Journalists v. Woodford, the 9th Circuit held in 2002 that "the public enjoys a First Amendment right to view executions from the moment the condemned is escorted into the execution chamber, including initial procedures that are inextricably intertwined with the process of putting the condemned inmate to death." The appellate court for our district ruled that it is unconstitutional to prevent "uninterrupted viewing of executions from the moment the condemned enters the execution chamber through, to and including, the time the condemned is declared dead."

We in the press take our responsibility to serve as the eyes and ears of the public very seriously. It is not our intent in any way to interfere with or delay the procedures related to this weighty matter; a simple decision to bring the press witnesses into the chamber approximately 25 minutes earlier than is otherwise contemplated would remedy the situation and ensure that procedures followed are in line with the 1st Amendment to the U.S. Constitution, as interpreted by our courts. We do not believe this would require any alteration to your established protocols, as they do not give a specific time for bringing in the media witnesses.

We urge you to promptly consider and make this change, and look forward to continuing to work with you in a professional and respectful manner. Thank you.

Sincerely,
  Betsy Russell, president, Idaho Press Club, ████████████████████████████████████
████████ Also endorsing this letter:
The Associated Press, The Post Register, The Idaho Statesman, Blackfoot Morning News, Newspaper Association of Idaho, Idaho State Broadcasters Association, Idaho Press-Tribune


The information contained in this communication is intended for the use of the designated recipients named above. If the reader of this communication is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify The Associated Press immediately by telephone at ████████████ and delete this email. Thank you.
[IP_US_DISC]
msk dccc60c6d2c3a6438f0cf467d9a4938

EXHIBIT
A

MESSAGES IN AP/EXECUTION FOR: Chuck                                                                       PHONEslips

Sent from my iPhone

Begin forwarded message:
From: Jeffrey Ray
Date: November 15, 2011 11:50:34 AM MST
To: Rebecca Boone
Subject: Re: Question for Director Reinke
Hi Becky:

The procedures were developed so that we would preserve the dignity of the offender. After discussing the matter with Director Reinke and legal counsel we have chosen to follow the procedures as they are written.

Jeff Ray
Public Information Officer
Idaho Department of Correction

The information contained in this e-mail message and any attachments may be privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to this e-mail and delete the message and any attachments from your computer.

"Boone, Rebecca"                                              11/15/2011 10:29 AM >>>
Hi Jeff,
I talked to Director Reinke Friday evening about a possible issue with the timing of when the media will be brought into the execution chamber - there's a 9th Circuit ruling from 2002 (California First Amendment Coalition et al v. Jeanne Woodford et al, Case No. 00-16752) that found that in order to comply with the 1st Amendment, the media/public witnesses must be able to view the execution from the moment the condemned walks into the execution chamber.
The director said he was going to look into it, and that he may try to move up our entrance to the witness area by 20 minutes to satisfy that requirement. I just wanted to double-check and see if the issue was resolved, and if there's anything I can do to help. The Idaho Press Club is interested in this, and I've got folks asking me if it's been figured out. Here's a link to the ruling, in case you need it:
http://www.firstamendmentcoalition.org/handbook/cases/CFAC_v_Woodford.pdf
Thanks -- I know you're completely slammed.
Best,
Becky

EXHIBIT
B

MESSAGES IN AP/EXECUTION FOR: Chuck                                          PHONEslips

Rebecca Boone
101 S. Capitol Boulevard, Ste. 304
Boise, ID 83702



The information contained in this communication is intended for the use
of the designated recipients named above. If the reader of this
communication is not the intended recipient, you are hereby notified
that you have received this communication in error, and that any review,
dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please
notify The Associated Press immediately by telephone at
and delete this email. Thank you.
[IP_US_DISC]
msk dccc60c6d2c3a6438f0cf467d9a4938

## ATTACHED FILES

winmail.dat

# CHARLES A. BROWN

ATTORNEY AT LAW

November 16, 2011

VIA MAIL AND FACSIMILE TO: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
AND EMAIL TO: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Brent Reinke, Director
Idaho Department of Correction
Mark Kubinski, Deputy Attorney General
Idaho Department of Correction
1299 North Orchard Street, Suite 110
Boise, ID 83706

David Hensley, Chief of Staff
Office of the Governor
P.O. Box 83720
Boise, ID 83720-0034

Dear Sirs:

I am legal counsel for The Associated Press, The Idaho Press Club, The Post Register, Blackfoot Morning News, Idaho Statesman, Idaho State Journal, Lewiston Tribune, Newspaper Association of Idaho, Idaho State Broadcasters Association, and The Idaho Press Tribune.

I am writing you in regard to the scheduled execution of Paul Ezra Rhoades set for this Friday, November 18, 2011. It appears that Idaho's protocol conflicts with the law as set forth in the Ninth Circuit.

There is a 20 minute window in Idaho's protocol that does not allow the media or any other witness to the execution to view the entirety of the process. In this case, witnesses will not be allowed to view the condemned inmate being strapped down and the IV's being inserted.

As you know, there is a First Amendment right to view all aspects of the execution.

EXHIBIT
C

324 Main St., P.O. Box 1225, Lewiston, ID 83501
Office (208) 746-9947 Facsimile (208) 746-5886

Brent Reinke, Director
Mark Kubinski, Deputy Attorney General
David Hensley, Chief of Staff
Page 2
November 16, 2011

When Rebecca Boone, a newswoman for The Associated Press, talked to you, Director Reinke, about her concerns and the application of the Ninth Circuit case, you indicated you would review the situation. Ms. Boone followed up with an email to Jeff Ray, the Public Information Officer for the Idaho Department of Correction, on November 15, 2011, again reiterating her concerns at which time Mr. Ray responded as follows:

> The procedures were developed so that we could preserve the dignity of the offender. After discussing the matter with Director Reinke and legal counsel, we have chosen to follow the procedures as they are written.

The purpose of this letter is to request reconsideration of that position. The Ninth Circuit case in question is *California First Amendment Coalition v. Jeanne Woodford*, 299 F.3d 868 (9th Cir. 2002), 30 Media L. Rptr. 2345 (Aug. 2002).

In that case the Ninth Circuit specifically dealt with the situation where "witnesses were not permitted to watch Bonin [the condemned prisoner] as the guards brought him into the chamber, tied him down to the gurney, inserted the intravenous lines and left him alone to await the warden's order to dispense the chemicals. Rather, by the time prison officials opened the chamber curtains, permitting the witnesses to see inside the chamber, Bonin lay motionless on the gurney, appearing to be asleep or sedated. (Bonin had not, in fact, been sedated.) The lethal chemicals were then administered-without any announcement to the witnesses-and after several minutes, Bonin was declared dead. The witnesses, therefore, observed Bonin as he died, but were unable to see the processes leading to that point."

The Ninth Circuit Court stated:

> The issues presented involve the balance between the State's ability to carry out executions in a safe and orderly manner and the public's right to be informed about how the State and its justice system implement the most serious punishment a state can exact from a criminal defendant-the penalty of death.

The Court specifically found that "we reach the question and conclude that the public does indeed enjoy a First Amendment right of access to view executions from the moment the condemned is escorted into the execution chamber."

Brent Reinke, Director
Mark Kubinski, Deputy Attorney General
David Hensley, Chief of Staff
Page 3
November 16, 2011

In explaining its opinion, the Court specifically stated:

> Independent public scrutiny-made possible by the public and media witnesses to an execution-plays a significant role in the proper functioning of capital punishment. An informed public debate is critical in determining whether execution by lethal injection comports with "the evolving standards of decency which mark the progress of a maturing society." (citation omitted) To determine whether lethal injection executions are fairly and humanely administered, or whether they ever can be, citizens must have reliable information about the "initial procedures," which are invasive, possibly painful and may give rise to serious complications.

Much more is known today than when the rules were written about complications involving lethal injection. In 2009, the execution of Romell Broom was halted after Ohio prison authorities spent an unprecedented two hours trying to insert a needle. According to news accounts, Broom said he was stuck with needles at least 18 times, with pain so excruciating he cried and screamed.

In Oregon's last execution in 1997, there were also delays because the IV team had trouble finding a suitable vein. Witnesses must see and hear the inmate's reaction and the staff discussion to fully evaluate the state's performance.

Please inform Ms. Rebecca Boone or Mr. Todd Dvorak, both with The Associated Press no later than 5:00 p.m. today, November 16, 2011, whether viewing during the 20 minute time period will be allowed. Their email addresses are as follows:

Thank you for your consideration.

Sincerely,

Charles A. Brown
Attorney at Law

CAB:clb

(This facsimile consists of three (3) pages.)

MESSAGES IN AP/EXECUTION FOR: Chuck　　　　　　　　　　　　　　　　PHONEslips

## E-MAIL

To: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓　　　　　　　　　　　　　　　　11-16-11　4:53pm
From: "Brent Reinke" ▓▓▓▓▓▓▓
CC: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Subj: Request to View

Date: Wed, 16 Nov 2011 17:52:46 -0700
To: charlesabrown@cableone.net

To:　Charles Brown, Attorney at Law ▓▓▓▓▓▓▓▓▓

Cc:　Rebecca Boone, Associated Press ▓▓▓▓▓▓
　　　Todd Dvorak, Associated Press ▓▓▓▓▓▓

From: Brent D. Reinke, Director

Date: November 16, 2011

RE:　Request to view

Dear Mr. Brown,


Thank you for your letter regarding your clients' desire to view all aspects of the November 18 execution of Paul Ezra Rhoades. The changes you have requested at this late hour to IDOC's execution procedures would have a potentially disruptive effect on the entire process. Among other things, it could compromise the anonymity of members of IDOC's execution team.

We are aware of the Ninth Circuit Court's ruling which you cite in your correspondence. The ruling was based on facts unique to California.

In the months to come we shall review every aspect of Friday's execution. As we do, we shall welcome your clients' input on how we can improve this process.

Sincerely,

Brent D. Reinke, Director
Idaho Department of Correction

EXHIBIT
D

MESSAGES IN AP/EXECUTION FOR: Chuck             PHONEslips

## ATTACHED FILES
Brent Reinke.vcf

# CHARLES A. BROWN

ATTORNEY AT LAW

November 17, 2011

VIA MAIL AND FACSIMILE TO: ▓
AND EMAIL TO: ▓

Brent D. Reinke, Director
Idaho Department of Correction
1299 North Orchard Street, Suite 110
Boise, ID 83706

Dear Mr. Reinke:

Thank you for your email of November 16, 2011. You indicate in your email that my client has made this request "at this late hour to IDOC's execution procedures," but it should be noted that the applicable Ninth Circuit case is a 2002 case and one would like to think that IDOC's execution procedures would have been compliant with the clear case law of our Circuit.

You also indicate in your email that the Ninth Circuit ruling ". . . was based on facts unique to California." I have to strenuously disagree with that position. The factual and legal parallel of the Ninth Circuit case is direct and unquestionably so, and our position in this matter is extremely secure.

In your email you indicate that in the months to come you intend to review every aspect of Friday's execution, but it is my understanding that another execution has been scheduled for February 2012. Thus, it would behoove the process to have an immediate review of IDOC's execution procedures so that reassurance can be given that IDOC's procedures are compliant with the applicable law, so that a "late hour" challenge can be avoided.

My clients have indicated that they do not want to interfere with the Rhoades execution with the understanding that a timely and meaningful review process will proceed.

Could you please give me a time line as to your proposed review process so that future complications and challenges can be avoided.

EXHIBIT
E

324 Main St., P.O. Box 1225, Lewiston, ID 83501
Office (208) 746-9947 Facsimile (208) 746-5886

Brent D. Reinke, Director
Page 2
November 17, 2011

Thank you for your consideration.

Sincerely,

*Charles A. Brown*

Charles A. Brown
Attorney at Law

CAB:blr

(This facsimile consists of two (2) pages.)

All of the pages comprising this facsimile transmission contain confidential or privileged information from the law office of Charles A. Brown. This information is intended solely for use by the individual or entity named as the recipient. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this transmission is prohibited. If you have received this transmission in error, please notify us by telephone immediately so we may arrange to retrieve this transmission at no cost to you. Thank you for your assistance.

FEB/01/2012/WED 06:19 PM

P. 002



**STATE OF IDAHO**
OFFICE OF THE ATTORNEY GENERAL
LAWRENCE G. WASDEN

February 1, 2012

Charles A. Brown
P.O. Box 1225
Lewiston, ID 83501

Via U.S. Mail and Facsimile: ▮▮▮▮▮▮▮▮

RE: Media Access to Executions

Dear Mr. Brown:

On behalf of Director Reinke and the Idaho Department of Correction ("IDOC"), thank you to you and the media representatives that attended the meeting on January 24, 2011 to discuss the issue of media access to executions. I believe the meeting was beneficial to both sides in terms of understanding each party's concerns and perspectives.

As I understand your clients' position, you believe that the media witnesses should be allowed to view the execution process from the time the offender is brought into the execution chamber until the pronouncement of death. It is my further understanding that you base your clients' position on the Ninth Circuit Court of Appeals' opinion in *California First Amendment Coalition v. Woodford*, 299 F.3d 868 (9th Cir. 2002). I have reviewed the *Woodford* opinion and am aware of the decision reached by the court based on the facts and evidence presented in California. It is the IDOC's position, however, that there are several distinctions unique to Idaho, which distinguishes Idaho's execution process from the California process considered by the court.

Additionally, the IDOC believes that its execution protocol, Standard Operating Procedure 135.02.01.001 ("SOP 135"), adequately balances the public's right to witness executions with the IDOC's need to carry out its statutory obligation in a safe and professional manner, while maintaining respect and dignity for all parties involved. Therefore, after due consideration, the IDOC has determined that its execution process, as currently outlined in SOP 135 provides the best manner for it to meet its responsibilities. As such, your clients' request for modification of SOP 135 is respectfully denied.

Criminal Law Division, Department of Correction
1299 North Orchard, Suite 110, P.O. Box 83720, Boise, Idaho 83720-0018
Telephone: (208) 658-2097, FAX: (208) 327-7485

EXHIBIT F

FEB/01/2012/WED 06:19 PM                                                                 P. 003

Charles A. Brown
February 1, 2012
Page 2

Sincerely,

*Mark A. Kubinski*
Mark A. Kubinski
Lead Deputy Attorney General

cc: Director Reinke
    Jeff Ray, IDOC PIO
    Todd Dvorak ▓▓▓▓▓
    Rebecca Boone ▓▓▓▓▓