**FILED**

**FOR PUBLICATION**

JUN 08 2012

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE ASSOCIATED PRESS, a New York corporation; IDAHO STATESMAN PUBLISHING, LLC, a Delaware limited liability company doing business as The Idaho Statesman; LEE ENTERPRISES, INCORPORATED, a Delaware corporation doing business as The Times-News; THE IDAHO PRESS CLUB, INC., an Idaho corporation; PIONEER NEWSPAPERS, INC., a Nevada corporation doing business as Idaho Press-Tribune, Idaho State Journal, Standard Journal, Teton Valley News, The News-Examiner, The Preston Citizen, and Messenger Index; TPC HOLDINGS, INC., an Idaho corporation doing business as Lewiston Tribune and Moscow-Pullman Daily News; BAR BAR INC., an Idaho corporation doing business as Boise Weekly; COWLES PUBLISHING COMPANY, a Washington corporation doing business as The Spokesman-Review; IDAHOANS FOR OPENNESS IN GOVERNMENT, INC., an Idaho non-profit corporation, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> C.L. "BUTCH" OTTER, in his official capacity as the Governor of the State of | No. 12-35456 <br><br> D.C. No. 1:12-cv-00255-EJL <br><br> OPINION |

Idaho; ROBIN SANDY, in her official capacity as Chairman of the Idaho Board of Correction; HOWARD G. "J.R." VAN TASSEL, in his official capacity as Secretary of the Idaho Board of Correction; JAY NIELSEN, in his official capacity as Vice Chairman of the Idaho Board of Correction; BRENT REINKE, in his official capacity as the Director of the Idaho Department of Correction; KEVIN KEMPF, in his official capacity as Division Chief of Operations of the Idaho Department of Correction,

Defendants - Appellees.

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted June 7, 2012
Pasadena, California

Before: KOZINSKI, Chief Judge, REINHARDT and BERZON, Circuit Judges.

Opinion by Judge REINHARDT:

Nearly a decade ago, we held in the clearest possible terms that "the public enjoys a First Amendment right to view executions from the moment the condemned is escorted into the execution chamber, including those 'initial procedures' that are inextricably intertwined with the process of putting the condemned inmate to death." *California First Amendment Coalition v. Woodford*, 299 F.3d 868, 877 (9th Cir.

2002). The State of Idaho has had ample opportunity for the past decade to adopt an execution procedure that reflects this settled law. It can hardly complain that it has been unaware of the binding precedent, since the media coalition specifically cited *California First Amendment Coalition* in asking the State to alter its execution procedure prior to the November 2011 execution of Paul Rhoades. The State has nonetheless failed to bring its procedure into compliance with the law—either in the days prior to the Rhoades execution or in the succeeding months, when it met with the media coalition to discuss the matter. The State has persisted in its intransigence even after we suggested at oral argument that a voluntary amendment (like the one that Arizona recently adopted) might avert the need for an injunction. The State's complaints about the last-minute nature of this litigation ignore this history. We fault the State, not the media plaintiffs, for our need to consider this question several days before an execution: the State has missed opportunity after opportunity to bring its execution procedures into compliance with the clear law of this Circuit.

We reverse the district court's denial of a preliminary injunction and remand for the entry of such an injunction forthwith, and in any event prior to the impending execution of Richard Leavitt.

I

The dispute here is narrow. Under its current execution procedure, the State would allow witnesses to view the final portion of Leavitt's execution, beginning with the reading of the death warrant and concluding with the pronouncement of death. As in the Rhoades execution, however, the State does not intend to allow witnesses to view the first part of the procedure, beginning with Leavitt's entry into the execution chamber, through the insertion of intravenous lines into his body.

A coalition of media corporations filed this action under 42 U.S.C. § 1983 shortly after the issuance of the warrant for Leavitt's execution. The plaintiffs assert that, as surrogates for the public, they have a right to witness all stages of the executions conducted by the State of Idaho, rather than just the final portion, and that the State's refusal to allow such access violates the First Amendment. They seek a preliminary injunction on the basis that, without such relief, they will be irreparably damaged by the denial of their right to view Leavitt's execution in its entirety.

The State asserts what it considers to be four legitimate penological objectives that, in its view, override the First Amendment right of public access to executions in their entirety. First, it says, it wishes to preserve the condemned prisoner's privacy and dignity. Second, it wishes to respect the sensibilities of the condemned prisoner's family. Third, it wishes to do the same for his fellow death-row inmates. Fourth, it

-4-

wishes to protect the anonymity of the members of the medical team who participate in the execution. Under *California First Amendment Coalition*, the State can prevail if the limitation of the plaintiffs' First Amendment right is "reasonably related to legitimate penological objectives," rather than "an exaggerated response to those concerns," *Turner v. Safley*, 482 U.S. 78, 87 (1987) (internal quotation marks omitted). *See* 299 F.3d at 879 (adopting the *Turner* standard).

"A plaintiff seeking a preliminary injunction must establish" four elements: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion. In deciding whether the district court has abused its discretion, we employ a two-part test: first, we 'determine de novo whether the trial court identified the correct legal rule to apply to the relief requested'; second, we determine 'if the district court's application of the correct legal standard was . . . illogical, . . . implausible, or . . . without support in inferences that may be drawn from the facts in the record.' A decision based on an erroneous legal standard or a clearly erroneous finding of fact amounts to an abuse of discretion." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (citations omitted).

II

We hold that the district court abused its discretion with respect to each of the four elements that the plaintiffs must establish.

A

First, the plaintiffs are quite likely to succeed on the merits of their First Amendment claim. As discussed above, *California First Amendment Coalition* makes clear that the First Amendment protects the public's right to witness all phases of Leavitt's execution, including the portion that the State now shields from view. Although the State argued below that *California First Amendment Coalition*'s interpretation of the First Amendment was premised in part on the history of public executions in California—a history that, the State asserted, differed from Idaho's—the district court rejected this argument, and the State does not raise it on appeal. The only question as to the merits, then, is whether the State has asserted legitimate penological interests sufficient to *overcome* the First Amendment right of public access. *See California First Amendment Coalition*, 299 F.3d at 879 (adopting as the relevant inquiry "whether a prison regulation that burdens fundamental rights is reasonably related to legitimate penological objectives, or whether it represents an exaggerated response to those concerns" (internal quotation marks omitted)).

Here, the plaintiffs showed that they are likely to succeed on the merits simply by pointing to our prior opinion in *California First Amendment Coalition*—an opinion that appears squarely to govern this case. To the extent that the State's asserted interests in protecting the dignity of condemned prisoners and the sensibilities of their family and fellow inmates qualify as legitimate penological concerns in the first place—a matter about which we harbor significant doubt, *see, e.g.*, *Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (recognizing the legitimate "governmental interests of security, order, and rehabilitation"), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)—the State has failed to explain why the modest expansion of witness access to include the insertion of intravenous lines would meaningfully affect them. The State of Idaho already offends the dignity of condemned inmates and the sensibilities of their families and fellow inmates by allowing strangers to watch as they are put to death. It strains credulity for the State to assert that these interests will be offended to a meaningfully greater degree when witnesses are permitted to watch the insertion of intravenous lines than when they are simply allowed to watch the inmates die. The State also has not explained why these interests were not equally at stake in California, although our opinion in *California First Amendment Coalition* did not explicitly consider them.

The State's interest in preserving the anonymity of medical team members who participate in the execution is more substantial. We considered this interest at length in *California First Amendment Coalition*, however, characterizing California's "fear that execution team members [would] be publicly identified and retaliated against" as "an overreaction, supported only by questionable speculation," 299 F.3d at 880, and upholding the factual finding "that '[t]he use of surgical garb is a practical alternative to restricting access to witness lethal injection executions in order to conceal the identity of such execution staff should security concerns warrant such concealment,'" *id.* at 884. The State has made no serious attempt to explain why medical team members in Idaho might be less likely to remain anonymous than those in California or why any risks that they might face upon public exposure would be greater. At oral argument, the State's counsel speculated that because the populations of Idaho or of the metropolitan area where its executions take place are smaller than those of California, medical team members in Idaho would be more likely to be identified on the basis of their appearance (even when shielded by surgical garb) than those in California. This is pure speculation; the State has presented no evidence to support it.

Nor has the State provided any support whatsoever for its speculation that it may be unable to recruit and retain medical team members to participate in executions. The declaration of Jeff Zmuda, Deputy Chief of the Idaho Bureau of Prisons, makes

only a bare assertion to that effect. Given that there are only five members of the current medical team, it would have been a simple matter for the State to submit evidence, such as a declaration filed under seal from a team member or a declaration from an official who had spoken with the team members, that any one of those members was even considering withdrawing from participation in either Leavitt's execution or any future execution. At oral argument, we invited the State to produce, even at this late date, any such evidence that it might be able to obtain. We conclude from the State's failure to do so that no such evidence exists.

The district court was correct to have "significant concerns" regarding the State's arguments. Dist. Ct. Order at 14-15. The court abused its discretion, however, by failing to recognize, in light of these concerns, that the plaintiffs are likely to succeed in showing that the State's limitation on witness access is not "reasonably related to legitimate penological objectives" but rather "represents an exaggerated response to those concerns," *Turner*, 482 U.S. at 87 (internal quotation marks omitted).

B

The district court also held that the plaintiffs had failed to show that they would suffer irreparable harm in the absence of an injunction because "witnesses still [would] be allowed to see the execution process from the time after the inmate is

restrained and IVs are placed" and because "there will most likely be other executions in the future." Dist. Ct. Order at 16-17. Both rationales are contrary to law. The first ignores our explicit holding in *California First Amendment Coalition* that the First Amendment protects the right to witness executions in their entirety. To say that the plaintiffs will not suffer harm because they will be able to witness part of Leavitt's execution is like saying that the public would not suffer harm were it allowed to read only a portion of the *New York Times*. The second rationale ignores the rule that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). That the plaintiffs may be able to observe future executions in Idaho does not mean that they are unharmed by the denial of their right to observe *this* execution. These legal errors constituted an abuse of the district court's discretion. *Pimentel*, 670 F.3d at 1105. The plaintiffs will suffer irreparable injury in the absence of a preliminary injunction.

## C

Our balancing of the equities—like the district court's—turns on whether there is any realistic possibility that a preliminary injunction will delay Leavitt's execution. We reject each of the three premises on which the district court believed that such a delay could occur. First, there is minimal chance that the injunction will lead to a successful stay application by Leavitt. Not only is the prospect of any such application

speculative, but if filed, it would likely fail. Second, in light of the minimal changes that an injunction might require and the State's failure to specify the nature of any such change, we have trouble imagining why an alteration to the training procedures would be necessary. Even if such a change were required, the State has not explained why it would delay the execution. Third, as noted earlier, the State has failed to do more than speculate that a member of the medical team might decline to participate in Leavitt's execution, and it advised us at oral argument that it had made no attempt to contact any member of the team in order to inquire whether there is any basis for its speculation. We therefore see no realistic possibility that a preliminary injunction requiring the State to comply with *California First Amendment Coalition* will delay Leavitt's execution.

### D

For the same reason, we have no doubt that the entry of a preliminary injunction promotes the public interest. "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). The district court relied instead on the public interest in the timely enforcement of criminal judgments. Although we recognize that interest as legitimate, it lacks any weight in light of our conclusion that no delay will occur.

-11-

### III

We reverse the district court's denial of a preliminary injunction and remand for the entry of an order requiring the State to allow witnesses to observe Leavitt's entire execution, "from the moment [he] enters the execution chamber through, to and including, the time [he] is declared dead." *California First Amendment Coalition*, 299 F.3d at 886 (internal quotation marks omitted).

The mandate shall issue forthwith.

**REVERSED and REMANDED.**

## COUNSEL LISTING

Charles A. Brown, Lewiston, Idaho, for the Plaintiffs-Appellants.

Lawrence G. Wasden, Attorney General; Steven L. Olsen, Chief of Civil Litigation; Michael S. Gilmore, Deputy Attorney General; Mark A. Kubinski, Lead Deputy Attorney General, Idaho Department of Correction; Thomas C. Perry, Counsel to the Governor; Boise, Idaho; for the Defendants-Appellees.